## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BEIJING OVERSEAS EDUCATION AND IMMIGRATION CONSULT SERVICE CO., LTD.,**<br><br>      **Plaintiff,**<br><br>   **v.**<br><br>**UNITED STATES IMMIGRATION FUND, LLC; VIA MIZNER HOLDINGS, LP; 701 TSQ 1000 FUNDING, LLC; 101 MURRAY STREET FUNDING, LLC; AYB FUNDING 100, LLC; 76 ELEVENTH FUNDING, LLC; 125 GREENWICH STREET 1200 FUNDING, LLC; WEHO FUNDING 100, LLC; BROOKLYN PUBLIC LIBRARY FUNDING 100, LLC; and NASSAU COLISEUM FUNDING 100, LLC,**<br><br>      **Defendants.** | **Case No. 1:23-cv-7321**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Beijing Overseas Education and Immigration Consult Service Co., Ltd. ("Plaintiff" or "BOEICS"), by and through its attorneys Stinson LLP, for its Complaint against Defendants United States Immigration Fund, LLC ("USIF"); Via Mizner Holdings, LP; 701 TSQ 1000 Funding, LLC; 101 Murray Street Funding, LLC; AYB Funding 100, LLC; 76 Eleventh Funding, LLC; 125 Greenwich Street 1200 Funding, LLC; WEHO Funding 100, LLC; Brooklyn Public Library Funding 100, LLC; and Nassau Coliseum Funding 100, LLC (collectively, "Defendants"), states and alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action against Defendants, which are comprised of USIF and its affiliated investment funds (the "Fund Defendants"). USIF is a United States-sanctioned

regional center operator charged with implementing the federal EB-5 program dedicated to raising foreign investment funds for approved U.S. development projects, on one hand, and providing preferred immigration status to those investors, on the other hand.

2.     As an essential part of its function in raising and investing foreign funds, USIF and the Fund Defendants have engaged Plaintiff as its agent in China to develop relationships, manage language barriers, and ultimately deliver qualified investors to the U.S. projects.

3.     Despite negotiating clear payment terms to compensate Plaintiff for its efforts under numerous "Finder's Fee Agreements," and USIF itself guaranteeing those payments, the Fund Defendants have breached their obligations to make millions of dollars of such payments, and USIF has defaulted on its guaranty.

4.     This conduct by Defendants gives rise to the legal claims alleged herein.  As an initial matter, there are certain amounts owed by certain Defendants to Plaintiff, about which there is, and cannot be, any dispute.  Those claims comprise a classic and express "Account Stated" under New York law.  Those certain Defendants have confirmed the agreed-upon schedule for the payment to Plaintiff, as Defendants' "Agent," of $5,323,088 in annual fees earned by Plaintiff in 2022 alone pursuant to several valid and enforceable contracts between the parties.  As of today, Defendants have not paid Plaintiff the Third and Fourth Quarter Fees of 2022, nor have they paid the First and Second Quarter Fees of 2023.  Accordingly, Defendants owe Plaintiff $5,323,088 in quarterly annual fees for 2022 and 2023.

5.     Additionally, Plaintiff asserts breach of contract claims because certain Defendants have materially breached several valid and enforceable contracts between the parties under New York law, causing tens of millions of dollars in damages to Plaintiff.

6. By way of background, the parties entered a so-called Master Finder's Fee Agreement (the "MFFA") for the purpose of compensating Plaintiff for its unique and highly sought-after services of identifying and referring qualified Chinese foreign investors who were willing to invest substantial sums in USIF-sponsored development projects throughout America. The foreign investors did so, creating local jobs and often funding important local public works, in exchange for a chance at their dream of eventually obtaining legal U.S. permanent residency pursuant to the U.S. "EB-5" program.

7. Plaintiff performed under the projects USIF sponsored, with Plaintiff sourcing hundreds of qualified investors and hundreds of millions of dollars in capital needed to finance notable projects such as: The Brooklyn Public Library, the Nassau Coliseum, and various business and residential district redevelopment projects, among others.

8. While Plaintiff did its part, Defendants did not meet their payment obligations to Plaintiff. Following communications including the involvement of counsel for both Plaintiff and Defendants, the parties reached a definitive agreement on the balance owed by certain Defendants to Plaintiff regarding only Quarter 1 and Quarter 2 of 2022 for four of the many EB-5 Projects—Via Mizner Holdings LP; 701 TSQ 1000 Funding, LLC; 101 Murray Street Funding, LLC; and AYB Funding 100, LLC—which included a detailed schedule for the quarterly payment of $1,330,772 over the period spanning from January 2022 through March 2022. However, those Defendants later refused to pay Plaintiff its owed balance unless Plaintiff agreed to sign an acknowledgment stating that Plaintiff was not owed any additional payments for all of the EB-5 Projects for which the parties had referral agreements. Defendants knew Plaintiff contended it was owed many millions more under those other projects. Plaintiff could not agree to forego those amounts.

9.      Following the parties' reaching the express agreement as to the amounts owed and the schedule of repayment for the four certain EB-5 Projects, Defendants have made two payments to Plaintiff of $1,330,772 each for Quarters 1-2 of 2022, but have refused to pay Plaintiff its rightfully owed Annual Fees (in the same quarterly amount) for Quarters 3-4 of 2022, as well as for Quarters 1-2 of 2023, totaling $5,323,088.

10.      Finally, various of the Defendants have failed to pay tens of millions of dollars of Annual Fees and Tail Fees to Plaintiff, under the false premises that such obligations have either expired, are not owed due to the default of those Defendants' counterparties, or that the USIF guaranties are not operative.  Each of these defenses fails, and those Defendants are liable to Plaintiff for such overdue payments.

## PARTIES

11.      Plaintiff BOEICS is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business located at F32, Tower A, The Spaces International Center Dong Da Qiao Street, Chaoyang District, Beijing, China.

12.      On information and belief, Defendant USIF is a Delaware limited liability company with its principal place of business located at 115 Front Street, Suite 300, Jupiter, Florida.  USIF can be served via registered agent at SK Delaware Management Inc. 225 South State Street, Dover, Delaware 19901 Kent County.

13.      On information and belief, Defendant Via Mizner Holdings, LP ("Via Mizner") is a Delaware limited partnership with its principal place of business located at 700 – 998 S. Federal Highway, Boca Raton, Florida.  Via Mizner can be served via registered agent at VMH Management LLC C/O SK Delaware Management Inc. 225 South State Street, Dover, Delaware 19901 Kent County.

14.     On information and belief, Defendant 701 TSQ 1000 Funding, LLC ("701 TSQ") is a Delaware limited liability company with its principal place of business located at 701 7th Ave, New York, New York.  701 TSQ can be served via registered agent at SK Delaware Management Inc. 225 South State Street, Dover, Delaware 19901 Kent County.

15.     On information and belief, Defendant 101 Murray Street Funding, LLC ("101 Murray Street") is a Delaware limited liability company with its principal place of business located at 101 Murray Street, New York City, New York.  101 Murray Street can be served via registered agent at SK Delaware Management Inc. 225 South State Street, Dover, Delaware 19901 Kent County.

16.     On information and belief, Defendant AYB Funding 100, LLC ("AYB") is a Delaware limited liability company.  AYB can be served via registered agent at SK Delaware Management Inc. 225 South State Street, Dover, Delaware 19901 Kent County.

17.     On information and belief, Defendant 76 Eleventh Funding, LLC ("76 Eleventh") is a Delaware limited liability company with its principal place of business located at 76 Eleventh Avenue, New York, New York.  76 Eleventh can be served via registered agent at SK Delaware Management Inc. 225 South State Street, Dover, Delaware 19901 Kent County.

18.     On information and belief, Defendant 125 Greenwich Street 1200 Funding, LLC ("125 Greenwich Street") is a Delaware limited liability company with its principal place of business located at 125 Greenwich Street, New York, New York.  125 Greenwich Street can be served via registered agent at SK Delaware Management Inc. 225 South State Street, Dover, Delaware 19901 Kent County.

19.     On information and belief, Defendant WEHO Funding 100, LLC ("WEHO") is a Delaware limited liability company with its principal place of business located at 9040 Sunset

Boulevard, West Hollywood, California. WEHO can be served via registered agent at SK Delaware Management Inc. 225 South State Street, Dover, Delaware 19901 Kent County.

20.    On information and belief, Defendant Brooklyn Public Library Funding 100, LLC ("Brooklyn Public Library") is a Delaware limited liability company with its principal place of business located at 280 Cadman, Brooklyn, New York. Brooklyn Public Library can be served via registered agent at SK Delaware Management Inc. 225 South State Street, Dover, Delaware 19901 Kent County.

21.    On information and belief, Defendant Nassau Coliseum Funding 100, LLC ("Nassau Coliseum") is a Delaware limited liability company with its principal place of business located at 1255 Hempstead Turnpike, Uniondale, New York. Nassau Coliseum can be served via registered agent at SK Delaware Management Inc. 225 South State Street, Dover, Delaware 19901 Kent County.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction because this action seeks damages in excess of $75,000, and there exists diversity of citizenship between Plaintiff and Defendants. 28 U.S.C.A. § 1332.

23.    To the extent Defendants are domiciled in this state, this Court has general jurisdiction over the Defendants because Defendants' "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). A corporation "is at home and subject to general jurisdiction only in its place of incorporation or principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016). Defendants 76 Eleventh, 125 Greenwich Street, Brooklyn Public Library, Nassau Coliseum, 701 TSQ, 101 Murray Street, and AYB all have their principal places of business in the State of New York.

24.     To the extent that Defendants USIF, WEHO, and Via Mizner are not domiciled in this state, this Court has specific jurisdiction over these Defendants because they have "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 291 (S.D.N.Y. 2019) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). It is well established that a defendant can "purposefully avail itself of a forum by directing its agents or distributors to take action there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018).

25.     Venue in this Court is proper in this District as to the Defendants pursuant to 28 U.S.C.A. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in New York, or a substantial part of property that is the subject of the action is situated in New York.

## FACTUAL BACKGROUND

26.     Congress created the EB-5 Investor Visa Program in 1990 to stimulate the U.S. economy through job creation and capital investment by foreign investors. In essence, the program grants foreign investors a pathway toward becoming lawful permanent residents of the U.S., also denoted as "green card" holders. By committing the requisite amounts at risk in commercial enterprises that create (or preserve) at least 10 jobs, the foreign investors were granted an "EB-5" visa that might ultimately be converted from conditional residence status to a "green card" for the foreign investors.

27.     To implement that program, Congress also created a Regional Center Program, in which entities (or "Regional Centers") approved by USCIS would sponsor the pooled foreign investments as loans through investment funds into the targeted projects. These Regional Centers required access to qualifying foreign investors in order to source and raise the funding required for

these projects, which were often massive real estate developments or public/private works involving hundreds of millions of dollars in financing. They provided projects and all of the related information, such as terms on recruiting funds and remunerations, to companies like USIF who would then confirm the terms and conditions and provide resources in order to assist finders such as Plaintiff to promote EB-5 investments in the China market.

28.     The demand for EB-5 visas has been particularly fervent among investors from Asia, and especially strong among Chinese-origin investors. As such, Regional Centers had an acute need for assistance in finding such Chinese investors. Plaintiff filled that need for Defendants. With access to a wide network of Chinese nationals with a desire to acquire lawful U.S. residence, and the wherewithal to help underwrite U.S. job creation, Plaintiff's expertise was highly-valued by Regional Centers looking to raise and deploy EB-5 capital. Plaintiff was expected to make good use of its resources and recruit interested investors to the sponsored projects through its promotion campaign.

29.     In order to raise the substantial capital required by the various public works and real estate development projects it was sponsoring as a Regional Center pursuant to EB-5 Investor Visa Program, USIF and the other Defendants engaged Plaintiff as their contractual Agent. Defendants were to bring in the project from the project provider, confirm the terms and conditions, provide resources in order to assist Plaintiff to promote EB-5 in the China market, and settle payment to Plaintiff according to agreements in a timely manner and correct amount stated by Defendants. In essence, the parties agreed that Plaintiff would identify and propose qualified foreign investors (i.e., from China) and upon their successful participation in the EB-5 Investor Visa Program via USIF's sponsored projects, Defendants agreed to compensate Plaintiff based upon negotiated payment metrics. Those payment terms typically included: (1) a "Marketing Fee;"

(2) "Finder's Fee" payments upon each of the investment, submission, and then the approval of each referred investor's I-526 Petition to USCIS; and (3) an "Annual Fee" payment due to Plaintiff in succeeding years following the I-526 approval of each referred investor.

30.    To memorialize this framework and to reconcile versions of their prior dealings, Plaintiff and USIF executed the MFFA that served as the basis for both the overall framework of the parties' bargain (to be repeated serially for specific succeeding projects), as well as providing in their Schedules the specific economic terms for each project.

31.    The MFFA was dated November 4, 2015, and names Plaintiff (as "Agent"), USIF (as "Guarantor"), and each of the respective funding companies identified in the Schedules attached thereto and made a part hereof (each a "Company") as contracting parties.  In addition to Plaintiff and Defendant USIF, the Defendants to this lawsuit that signed the MFFA through the Schedules as paying Companies are 125 Greenwich Street, Brooklyn Public Library, 76 Eleventh, Nassau Coliseum, 701 TSQ, and WEHO.

32.    According to Sections 2-4 of the MFFA, for each investment project, the respective Company agreed to pay Plaintiff a staged Finder's Fee, a Marketing Fee, and pertinent to the claims in this case an "Annual Fee Payable to the Finder."  In Section 4 of the MFFA (entitled "Annual Fee Payable to Finder"), the parties agreed that Plaintiff (the "Finder") "will be entitled to receive the amount equal to the percentage to be agreed upon (and as stated in the Project Schedules attached hereto for the relevant Project) of the investment per year (the "Annual Fee").

33.    In this "Annual Fee" Section of the MFFA, it stated that the Annual Fee would be paid from the time of the closing of the funding of 95% of the individual loan and "expiring on the maturity date of the Loan for each such Project."  The timing mechanism in the MFFA set forth

that the Annual Fees were to be paid quarterly in arrears out of interest payments made by the respective Developer(s).

34.    Each of the Project Schedules to the MFFA set forth the economic terms for each such Project, including compensation and the respective Annual Fee. Each of these schedules also confirmed the term for the payment of the Annual Fee to Plaintiff, which would only "expir[e] upon the maturity date of the Loan."

35.    According to its Section 1, the MFFA contains an inconsistent "Term" provision, which states that "the terms agreed upon in the attached schedules shall expire upon the earlier of (i) five (5) years commencing upon the execution of the corresponding schedule[], or (ii) the repayment of the loan for the relevant Project [] and payment of all interest due and owing thereafter." However, the term provided for in the Project Schedules governs over the arguably inconsistent term recited in the earlier Section 1 of the MFFA. Upon information and belief, the Project Schedules were later-signed writings.

36.    Section 13.1 of the MFFA also contained a "Guaranty" provision, which stated that "[a]s an inducement for Finder to enter into this Agreement, USIF hereby guarantees the full payment of the Finder's Fee and Annual Fee for each project."

37.    Section 14 of the MFFA contained a "Governing Law" provision, which stated that "[i]t is the Parties' intention that the laws of the State of New York shall govern the validity of this Agreement."

38.    Plaintiff, USIF, and certain Fund Defendants entered into an Amended Agreement that was dated May 5, 2019 ("2019 Amendment"). The 2019 Amendment focused on the so-called "Tail Fees" to be paid to Plaintiff with respect to the redeployment of previously invested funds to new EB-5 projects.

39.    The 2019 Amendment stated that "the MFFA provided for the expiration of the term of Project Schedules upon the earlier of 5 years from the applicable Project Schedule execution date or the repayment of the Loan applicable to each such Project Schedule." Plaintiff, USIF, AYB, 701 TSQ, and 101 Murray Street were all signatories to the 2019 Amendment.

**The Via Mizner Agreement, the MFFA Project Schedules, the 2019 Amendment, and the Redeployment Agreements**

40.    On or about July 29, 2012, prior to the parties entering the MFFA, Plaintiff, USIF, and Via Mizner entered into agreements for the economic terms relating to the so-called "Via Mizner Project" sponsored by USIF. Plaintiff signed a Schedule addendum to memorize the economic terms on behalf of Plaintiff with USIF and Via Mizner. Pursuant to the Annual Fee Structure for the Via Mizner Project, USIF and Via Mizner agreed to pay an Annual Fee to Plaintiff of (1) $252,000 for the first quarter, (2) $756,000 for the second quarter, (3) $1,092,000 for the third quarter, and (4) $924,000 each of the five-years succeeding the I-526 approval after the third quarter.

41.    On or about November 4, 2015, Plaintiff, USIF, and 125 Greenwich Street entered into a Schedule addendum to the MFFA relating to the so-called "125 Greenwich Street Project" sponsored by USIF. Pursuant to the Schedule for the 125 Greenwich Street Project attached to the MFFA, Defendants agreed to pay an Annual Fee to Plaintiff of $4,132,250 until the maturity of the loan.

42.    On or about November 4, 2015, Plaintiff, USIF, and Brooklyn Public Library entered into a Schedule addendum to the MFFA relating to the so-called "Brooklyn Public Library Project" sponsored by USIF. Pursuant to the Schedule for the Brooklyn Public Library Project attached to the MFFA, Defendants agreed to pay an Annual Fee to Plaintiff of $2,612,500 until the maturity of the loan.

43.     On or about November 4, 2015, Plaintiff, USIF, and 76 Eleventh entered into a Schedule addendum to the MFFA relating to the so-called "76 Eleventh Project" sponsored by USIF.  Pursuant to the Schedule for the 76 Eleventh Project attached to the MFFA, Defendants agreed to pay an Annual Fee to Plaintiff of $6,127,500 until the maturity of the loan.

44.     On or about November 4, 2015, Plaintiff, USIF, and Nassau Coliseum entered into a Schedule addendum to the MFFA relating to the so-called "Nassau Coliseum Project" sponsored by USIF.  Pursuant to the Schedule for the Nassau Coliseum Project attached to the MFFA, Defendants agreed to pay an Annual Fee to Plaintiff of $1,805,000 until the maturity of the loan.

45.     On or about November 4, 2015, Plaintiff, USIF, and WEHO entered into a Schedule addendum to the MFFA relating to the so-called "WEHO Project" sponsored by USIF.  Pursuant to the Schedule for the WEHO Project attached to the MFFA, Defendants agreed to pay an Annual Fee to Plaintiff of $1,567,500 until the maturity of the loan.

46.     On or about November 4, 2015, Plaintiff, USIF, and 701 TSQ entered into a Schedule addendum to the MFFA relating to the so-called "701 TSQ Project" sponsored by USIF. Pursuant to the Schedule for the 701 TSQ Project attached to the MFFA, Defendants agreed to pay an Annual Fee to Plaintiff of $8,550,000 until the maturity of the loan.  On or about May 20, 2019, the parties entered into the 2019 Amendment relating to the so-called "701 TSQ Project" sponsored by USIF.  Under the 2019 Amendment, USIF agreed to pay a "Tail Fee" to Plaintiff of 1.5% per annum based on the number of Foreign Investors previously introduced by Plaintiff until the maturity of the loan.

47.     On or about April 15, 2014, Plaintiff, USIF, and 101 Murray Street entered an agreement relating to the so-called "101 Murray Street Project" sponsored by USIF.  Pursuant to the Schedule for the 101 Murray Street Project attached to the Finder's Fee Agreement, Defendants

agreed to pay an Annual Fee until maturity of the loan. On or about May 20, 2019, the parties entered into the 2019 Amendment relating to the so-called "101 Murray Street Project" sponsored by USIF. Under the 2019 Amendment, Defendants agreed to pay a "Tail Fee" to Plaintiff of 2% per annum based on the number of Foreign Investors previously introduced by Plaintiff until maturity of the loan.

48.    On or about December 17, 2013, the parties entered into agreements relating to the so-called "AYB Project" sponsored by USIF. Plaintiff signed the Schedule A addenda that are in reference to the Finder's Fee Agreement to memorize the economic terms on behalf of Plaintiff with USIF. Pursuant to the Schedule for the AYB Project attached to the Finder's Fee Agreement, Defendants agreed to pay an Annual Fee until maturity of the loan. On or about May 20, 2019, the parties entered into the 2019 Amendment relating to the so-called "AYB Project" sponsored by USIF. Under the 2019 Amendment, Defendants agreed to pay a "Tail Fee" to Plaintiff of 2% per annum based on the number of Foreign Investors previously introduced by Plaintiff until maturity of the loan.

49.    Plaintiff performed under the MFFA, the 2019 Amendment, the previous Finder's Fee Agreements dating back to 2012, and the multiple Schedule A addenda.

50.    USIF paid the required Referral Fees for each project mentioned above, but USIF failed to pay the required Annual Fee payments and Tail Fees relating to numerous projects for which Plaintiff served as Agent for Defendants.

51.    Plaintiff presented the accounts with the outstanding balance of the required "bonus" payments for the first quarter of 2022 to USIF relating to the Via Mizner, 701 TSQ, 101 Murray Street, and AYB Projects and demanded payment.

52.     On August 29, 2022, USIF agreed and settled with Plaintiff upon accounts stated of the amounts owed to Plaintiff for the Via Mizner, 701 TSQ, 101 Murray Street, and AYB Projects by expressly stating in an email that "[t]he two accounting departments have agreed, via the reconciliation process, that $1,330,772 is due," but USIF refused to pay Plaintiff until and unless Plaintiff signed an acknowledgment stating that USIF would not owe it any further interest payments for all other projects, contrary to the parties' agreement.

53.     As listed on USIF's email communication, USIF accepted the accounts for the Via Mizner, 701 TSQ, 101 Murray Street, and AYB Projects presented by Plaintiff as correct and confirmed amounts owed to Plaintiff under each project account with detailed calculation ("Account Stated").  Copy of the Account Stated is attached as **Exhibit A** and is incorporated by reference herein.

54.     Pursuant to the Account Stated and the email communication, USIF promised to pay Plaintiff $1,330,772, which was due on or before the 15th day of each March, June, September, and December from March 15, 2022 to December 15, 2022.  And Plaintiff is still owed the same amount in quarterly payments for 2023 and beyond pursuant to the parties' agreements.

55.     On or about December 13, 2022, after BOEICS was forced to involve legal counsel to communicate with USIF about BOEICS's due payments, USIF paid BOEICS $1,330,772, which it owed for the First Quarter of 2022 and had been due nine months before on March 15, 2022.

56.     USIF has since made one additional payment of $1,330,772, which it owed BOEICS for the Second Quarter of 2022.  But USIF has failed to make any further payment and owes $5,323,088 in Annual Fee payments to Plaintiff for the last two quarters of 2022 and the first two quarters of 2023, plus prejudgment interest calculation at nine percent, related only to the Via Mizner, 701 TSQ, 101 Murray Street, and AYB Projects.

57.     USIF has also failed and refused to pay millions of dollars in Annual Fees and Tail Fees to Plaintiff as required under the 76 Eleventh, 125 Greenwich Street, WEHO, Brooklyn Public Library, and Nassau Coliseum contracts.

58.     USIF has indicated it will not pay Plaintiff the Redeployment fees for the Nassau Coliseum Project it will be owed, in which over 700 of Plaintiff's clients are being redeployed to another of the Defendants' projects.

## COUNT I AGAINST VIA MIZNER
### (Account Stated)

59.     Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

60.     Plaintiff provided services to Via Mizner under the 2012 Finder's Agreement, MFFA, the 2019 Amendment, and the attached schedules, but Via Mizner failed to pay Plaintiff Annual Fee payments under the agreements.

61.     Plaintiff presented Defendant USIF, on behalf of Via Mizner, with accounts representing the Annual Fee payments due and owing to Plaintiff.

62.     The accounts were expressly accepted by USIF, on behalf of Via Mizner, as correct and were confirmed on the payment schedule attached to the email communication between the parties.

63.     USIF, on behalf of Via Mizner, expressly promised to pay the amount owed to Plaintiff pursuant to the Account Stated and the email communication.

64.     Plaintiff has demanded that USIF, on behalf of Via Mizner, pay the remaining amounts stated in the agreed payment schedule, but Defendants failed to pay the remaining amounts.

65.     Upon such accounts stated it was and is found that there was and is now due and owing from USIF, on behalf of Via Mizner, to Plaintiff the sum of $1,680,000 in Annual Fee payments for Quarters 3-4 of 2022 and Quarters 1-2 of 2023 to Plaintiff under the parties' agreements for the Via Mizner Project.

66.     By reason of the foregoing, accounts have been stated between Plaintiff and USIF, on behalf of Via Mizner, in the amount of $1,680,000.

67.     As a result of the Defendants' actions, Plaintiff has suffered and will continue to suffer damages in the amount of $1,680,000 with interest thereon.

### COUNT II AGAINST 701 TSQ
### (Account Stated)

68.     Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

69.     Plaintiff provided services to 701 TSQ under the MFFA, the 2019 Amendment, and the attached schedules, but 701 TSQ failed to pay Plaintiff Annual Fee payments under the agreements.

70.     Plaintiff presented USIF, on behalf of 701 TSQ, with accounts representing the Annual Fee payments due and owing to Plaintiff.

71.     The accounts were expressly accepted by USIF, on behalf of 701 TSQ, as correct and were confirmed on the payment schedule attached to the email communication between the parties.

72.     USIF, on behalf of 701 TSQ, expressly promised to pay the amount owed to Plaintiff pursuant to the Account Stated and the email communication.

73.    Plaintiff has demanded that USIF, on behalf of 701 TSQ, pay the remaining amounts stated in the agreed payment schedule, but Defendants failed to pay the remaining amounts.

74.    Upon such accounts stated it was and is found that there was and is now due and owing from USIF, on behalf of 701 TSQ, to Plaintiff the sum of $2,167,500 in Annual Fee payments for Quarters 3-4 of 2022 and Quarters 1-2 of 2023 to Plaintiff under the parties' agreements for the 701 TSQ Project.

75.    By reason of the foregoing, accounts have been stated between Plaintiff and USIF, on behalf of 701 TSQ, in the amount of $2,167,500.

76.    As a result of the Defendants' actions, Plaintiff has suffered and will continue to suffer damages in the amount of $2,167,500 with interest thereon.

## COUNT III AGAINST 101 MURRAY STREET
### (Account Stated)

77.    Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

78.    Plaintiff provided services to 101 Murray Street under the 2014 Finder's Fee Agreement, the 2019 Amendment, and the attached schedules, but 101 Murray Street failed to pay Plaintiff Annual Fee payments under the agreements.

79.    Plaintiff presented USIF, on behalf of 101 Murray Street, with accounts representing the Annual Fee payments due and owing to Plaintiff.

80.    The accounts were expressly accepted by USIF, on behalf of 101 Murray Street, as correct and were confirmed on the payment schedule attached to the email communication between the parties.

81.     USIF, on behalf of 101 Murray Street, expressly promised to pay the amount owed to Plaintiff pursuant to the Account Stated and the email communication.

82.     Plaintiff has demanded that USIF, on behalf of 101 Murray Street, pay the remaining amounts stated in the agreed payment schedule, but Defendants failed to pay the remaining amounts.

83.     Upon such accounts stated it was and is found that there was and is now due and owing from USIF, on behalf of 101 Murray Street, to Plaintiff the sum of $392,484 in Annual Fee payments for Quarters 3-4 of 2022 and Quarters 1-2 of 2023 to Plaintiff under the parties' agreements for the 101 Murray Street Project.

84.     By reason of the foregoing, accounts have been stated between Plaintiff and USIF, on behalf of 101 Murray Street, in the amount of $392,484.

85.     As a result of the Defendants' actions, Plaintiff has suffered and will continue to suffer damages in the amount of $392,484 with interest thereon.

## COUNT IV AGAINST AYB
### (Account Stated)

86.     Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

87.     Plaintiff provided services to AYB under the 2013 Finder's Fee Agreement, the 2019 Amendment, and the attached schedules, but AYB failed to pay Plaintiff Annual Fee payments under the agreements.

88.     Plaintiff presented USIF, on behalf of AYB, with accounts representing the Annual Fee payments due and owing to Plaintiff.

89.     The accounts were expressly accepted by USIF, on behalf of AYB, as correct and were confirmed on the payment schedule attached to the email communication between the parties.

90.     USIF, on behalf of AYB, expressly promised to pay the amount owed to Plaintiff pursuant to the Account Stated and the email communication.

91.     Plaintiff has demanded that USIF, on behalf of AYB, pay the remaining amounts stated in the agreed payment schedule, but Defendants failed to pay the remaining amounts.

92.     Upon such accounts stated it was and is found that there was and is now due and owing from USIF, on behalf of AYB, to Plaintiff the sum of $1,083,104 in Annual Fee payments for Quarters 3-4 of 2022 and Quarters 1-2 of 2023 to Plaintiff under the parties' agreements for the AYB Project.

93.     By reason of the foregoing, accounts have been stated between Plaintiff and USIF, on behalf of AYB, in the amount of $1,083,104.

94.     As a result of the Defendants' actions, Plaintiff has suffered and will continue to suffer damages in the amount of $1,083,104 with interest thereon.

## COUNT V AGAINST VIA MIZNER
### (Breach of Contract)

95.     Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

96.     The 2012 Finder's Fee Agreement and 2019 Amendment are valid and enforceable contracts.

97.     As stated above in greater detail, in July 2012, Via Mizner contracted to pay the Annual Fee according to the payment schedule attached to the 2012 Finder's Fee Agreement to Plaintiff.  Then, in 2019, Via Mizner contracted to pay the Annual Fee and Tail Fees according to the payment schedule attached to the 2019 Amendment to Plaintiff.

98.     Plaintiff fully complied with its obligations under the 2012 Finder's Fee Agreement and 2019 Amendment and has fully performed under both contracts.

99.    All conditions precedent to the obligation of Via Mizner to perform under the 2019 Amendment by paying Plaintiff the Annual Fees that Plaintiff is owed have occurred, been performed, or have been waived, excused, or frustrated by Via Mizner in material breach of the 2019 Amendment.

100.    Via Mizner was obligated to pay the total annual amount, $1,680,000, owed in quarterly installments of $420,000, due on or before the 15th day of each March, June, September, and December.

101.    However, as of August 17, 2023, Via Mizner has not made all of the payments that it owes to Plaintiff, specifically Quarters 3-4 of 2022 and Quarters 1-2 of 2023.

102.    Via Mizner materially breached the terms of the 2019 Amendment by failing to make payments to Plaintiff in the amount and manner required under the contract, and thus is in default under it.

103.    As a result of Via Mizner's material breach of the 2019 Amendment, Plaintiff has been damaged and is owed $1,680,000, together with interest thereon.

### COUNT VI AGAINST 701 TSQ
### (Breach of Contract)

104.    Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

105.    The MFFA and 2019 Amendment are valid and enforceable contracts.

106.    As stated above in greater detail, in November 2015, 701 TSQ contracted to pay the Annual Fee according to the payment schedule attached to the MFFA to Plaintiff.  Then, in May 2019, 701 TSQ contracted to pay the Annual Fee and Tail Fees according to the payment schedule attached to the 2019 Amendment to Plaintiff.

107. Plaintiff fully complied with its obligations under the MFFA and 2019 Amendment and has fully performed under both contracts.

108. All conditions precedent to the obligation of 701 TSQ to perform under the 2019 Amendment by paying Plaintiff the Annual Fees of 1.5% have occurred, been performed, or have been waived, excused, or frustrated by 701 TSQ in material breach of the 2019 Amendment.

109. 701 TSQ was obligated to pay the total annual amount, $2,167,500, in quarterly installments of $541,875, due on or before the 15th day of each March, June, September, and December.

110. Additionally, 701 TSQ failed to pay the full amounts for prior periods, totaling at least $75,562 in rightfully owed Annual and Tail Fees.

111. However, as of August 17, 2023, 701 TSQ has not made all of the payments that it owes to Plaintiff, specifically for Quarters 3-4 of 2022, Quarters 1-2 of 2023, and prior periods.

112. 701 TSQ materially breached the terms of the 2019 Amendment by failing to make payments to Plaintiff in the amount and manner required under the 2019 Amendment, and thus is in default under it.

113. As a result of 701 TSQ's material breach of the MFFA, Plaintiff has been damaged and is owed at least $2,243,062, together with interest thereon.

## COUNT VII AGAINST 101 MURRAY STREET
### (Breach of Contract)

114. Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

115. The 2014 Finder's Fee Agreement and 2019 Amendment are valid and enforceable contracts.

116.    As stated above in greater detail, in April 2014, 101 Murray Street contracted to pay the Annual Fee according to the payment schedule attached to the 2014 Agreement to Plaintiff. Then, in May 2019, 101 Murray Street contracted to pay the Annual Fee and Tail Fees according to the payment schedule attached to the 2019 Amendment to Plaintiff.

117.    Plaintiff fully complied with its obligations under the 2014 Agreement and 2019 Amendment and has fully performed under both contracts.

118.    All conditions precedent to the obligation of 101 Murray Street to perform under the 2019 Amendment by paying Plaintiff the Annual Fees of 2.0% have occurred, been performed, or have been waived, excused, or frustrated by 101 Murray Street in material breach of the 2019 Amendment.

119.    101 Murray Street was obligated to pay the total amount, $392,485, in quarterly installments of $98,121.25, due on or before the 15th day of each March, June, September, and December.

120.    Additionally, 101 Murray Street failed to pay the full amounts for prior periods, totaling at least $2,730,517.85 in rightfully owed Annual and Tail Fees.

121.    However, as of August 17, 2023, 101 Murray Street has not made all of the payments that it owes to Plaintiff, specifically for Quarters 3-4 of 2022, Quarters 1-2 of 2023, and prior periods.

122.    101 Murray Street materially breached the terms of the 2019 Amendment by failing to make payments to Plaintiff in the amount and manner required under the 2019 Amendment, and thus is in default under the it.

123.    As a result of 101 Murray Street's material breach of the 2019 Amendment, Plaintiff has been damaged and is owed at least $3,123,002.85, together with interest thereon.

## COUNT VIII AGAINST AYB
### (Breach of Contract)

124.    Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

125.    The 2013 Finder's Fee Agreement and 2019 Amendment are valid and enforceable contracts.

126.    As stated above in greater detail, in December 2013, AYB contracted to pay the Annual Fee according to the payment schedule attached to the 2013 Agreement to Plaintiff.  Then, in May 2019, AYB contracted to pay the Annual Fee and Tail Fees according to the payment schedule attached to the 2019 Amendment to Plaintiff.

127.    Plaintiff fully complied with its obligations under the 2013 Agreement and 2019 Amendment and has fully performed under both contracts.

128.    All conditions precedent to the obligation of AYB to perform the 2019 Amendment by paying Plaintiff the Annual Fees of 2.0% have occurred, been performed, or have been waived, excused, or frustrated by AYB in material breach of the 2019 Amendment.

129.    AYB was obligated to pay the total amount, $1,083,105.24 in quarterly installments of $270,776.31, due on or before the 15th day of each March, June, September, and December.

130.    Additionally, AYB failed to pay the full amounts for prior periods, totaling at least $195,948.19 in rightfully owed Annual and Tail Fees.

131.    However, as of August 17, 2023, AYB has not made all of the payments that it owes to Plaintiff, specifically for Quarters 3-4 of 2022, Quarters 1-2 of 2023, and prior periods.

132.    AYB materially breached the terms of the 2019 Amendment by failing to make payments to Plaintiff in the amount and manner required under the 2019 Amendment, and thus is in default under it.

133.     As a result of AYB's material breach of the 2019 Amendment, Plaintiff has been damaged and is owed at least $1,279,053.43, together with interest thereon.

## COUNT IX AGAINST 76 ELEVENTH
### (Breach of Contract)

134.     Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

135.     The MFFA is a valid and enforceable contract.

136.     As stated above in greater detail, in November 2015, 76 Eleventh contracted to pay the Annual Fee according to the payment schedule attached to the MFFA to Plaintiff.

137.     Plaintiff fully complied with its obligations under the MFFA and has fully performed under the MFFA.

138.     All conditions precedent to the obligation of 76 Eleventh to perform the MFFA by paying Plaintiff the Annual Fees of $24,381,250 have occurred, been performed, or have been waived, excused, or frustrated by 76 Eleventh in material breach of the MFFA.

139.     In the First Quarter of 2020, 76 Eleventh was obligated to pay Plaintiff $1,778,125, but Plaintiff only received $593,750, leaving an unpaid amount of $1,184,375.

140.     From the Second Quarter of 2020 to June 30, 2022, spanning nine quarters, the project interest totaled $1,784,375 per quarter for a total of $16,059,375.

141.     Additionally, 76 Eleventh was obligated to pay the total amounts of $7,137,500 in quarterly installments between July 1, 2022 and July 1, 2023, due on or before the 15th day of each March, June, September, and December.

142.     However, as of August 17, 2023, 76 Eleventh has not made all of the payments that it owes to Plaintiff, specifically for the Second Quarter of 2020 to June 30, 2022, Quarters 3-4 of 2022, and Quarters 1-2 of 2023.

143.    76 Eleventh materially breached the terms of the MFFA by failing to make payments to Plaintiff in the amount and manner required under the MFFA, and thus is in default under the MFFA.

144.    As a result of 76 Eleventh's material breach of the MFFA, Plaintiff has been damaged and is owed $24,381,250, together with interest thereon.

## COUNT X AGAINST 125 GREENWICH STREET
### (Breach of Contract)

145.    Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

146.    The MFFA is a valid and enforceable contract.

147.    As stated above in greater detail, in November 2015, 125 Greenwich Street contracted to pay the Annual Fee according to the payment schedule attached to the MFFA to Plaintiff.

148.    Plaintiff fully complied with its obligations under the MFFA and has fully performed under the MFFA.

149.    All conditions precedent to the obligation of 125 Greenwich Street to perform the MFFA by paying Plaintiff the Annual Fees of $4,132,250 have occurred, been performed, or have been waived, excused, or frustrated by 125 Greenwich Street in material breach of the MFFA.

150.    125 Greenwich Street was obligated to pay the total amounts of $1,033,062.50 in quarterly installments, due on or before the 15th day of each March, June, September, and December.

151.    However, as of August 17, 2023, 125 Greenwich Street has not made all of the payments that it owes to Plaintiff, specifically for Quarters 3-4 of 2022 and Quarters 1-2 of 2023.

152.    125 Greenwich Street materially breached the terms of the MFFA by failing to make payments to Plaintiff in the amount and manner required under the MFFA, and thus is in default under the MFFA.

153.    As a result of 125 Greenwich Street's material breach of the MFFA, Plaintiff has been damaged and is owed $4,132,250, together with interest thereon.

## COUNT XI AGAINST WEHO
### (Breach of Contract)

154.     Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

155.    The MFFA is a valid and enforceable contract.

156.    As stated above in greater detail, in November 2015, WEHO contracted to pay the Annual Fee according to the payment schedule attached to the MFFA to Plaintiff.

157.    Plaintiff fully complied with its obligations under the MFFA and has fully performed under the MFFA.

158.    All conditions precedent to the obligation of WEHO to perform the MFFA by paying Plaintiff the Annual Fees of $5,032,500 have occurred, been performed, or have been waived, excused, or frustrated by WEHO in material breach of the MFFA.

159.    In the First Quarter of 2020, WEHO was obligated to pay Plaintiff $457,500, but Plaintiff only received $305,000, leaving an unpaid amount of $152,500.

160.    From the Second Quarter of 2020 to the Third Quarter of 2021, spanning six quarters, the project interest totaled $457,000 per quarter for a total of $2,745,000.  USIF made a payment of $1,067,500 to Plaintiff in the Third Quarter of 2021, leaving an unpaid amount of $1,830,000.

161.    From the Fourth Quarter of 2021 to June 30, 2022, spanning three quarters, the project interest totaled $457,500 per quarter for a total of $1,372,500.

162.    Additionally, WEHO was obligated to pay the total amounts of $1,830,000 in quarterly installments, between July 1, 2022 and July 1, 2023, due on or before the 15th day of each March, June, September, and December.

163.    However, as of August 17, 2023, WEHO has not made all of the payments that it owes to Plaintiff, specifically for the Second Quarter of 2020 to the Third Quarter of 2021, the Fourth Quarter of 2021 to June 30, 2022, Quarters 3-4 of 2022, and Quarters 1-2 of 2023.

164.    WEHO materially breached the terms of the MFFA by failing to make payments to Plaintiff in the amount and manner required under the MFFA, and thus is in default under the MFFA.

165.    As a result of WEHO's material breach of the MFFA, Plaintiff has been damaged and is owed $5,032,500 together with interest thereon.

## COUNT XII AGAINST BROOKLYN PUBLIC LIBRARY
### (Breach of Contract)

166.    Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

167.    The MFFA is a valid and enforceable contract.

168.    As stated above in greater detail, in November 2015, Brooklyn Public Library contracted to pay the Annual Fee according to the payment schedule attached to the MFFA to Plaintiff.

169.    Plaintiff fully complied with its obligations under the MFFA and has fully performed under the MFFA.

170.    All conditions precedent to the obligation of Brooklyn Public Library to perform the MFFA by paying Plaintiff the Annual Fees of $7,133,333 have occurred, been performed, or have been waived, excused, or frustrated by Brooklyn Public Library in material breach of the MFFA.

171.    From the Second Quarter of 2020 to June 30, 2022, spanning nine quarters, Brooklyn Public Library was obligated to pay Plaintiff quarterly fees of $495,370.33, totaling $4,458,333.

172.    Additionally, Brooklyn Public Library was obligated to pay the total amounts of $2,675,000 in quarterly installments between July 1, 2022 and July 1, 2023, due on or before the 15th day of each March, June, September, and December.

173.    However, as of August 17, 2023, Brooklyn Public Library has not made all of the payments that it owes to Plaintiff, specifically for the Second Quarter of 2020 to June 30, 2022, Quarters 3-4 of 2022, and Quarters 1-2 of 2023.

174.    Brooklyn Public Library materially breached the terms of the MFFA by failing to make payments to Plaintiff in the amount and manner required under the MFFA, and thus is in default under the MFFA.

175.    As a result of Brooklyn Public Library's material breach of the MFFA, Plaintiff has been damaged and is owed $7,133,133, together with interest thereon.

## COUNT XIII AGAINST NASSAU COLISEUM
### (Breach of Contract)

176.    Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

177.    The MFFA is a valid and enforceable contract.

178.    As stated above in greater detail, in November 2015, Nassau Coliseum contracted to pay the Annual Fee according to the payment schedule attached to the MFFA to Plaintiff.

179.    Plaintiff fully complied with its obligations under the MFFA and has fully performed under the MFFA.

180.    All conditions precedent to the obligation of Nassau Coliseum to perform the MFFA by paying Plaintiff the Annual Fees of $6,498,375 have occurred, been performed, or have been waived, excused, or frustrated by Nassau Coliseum in material breach of the MFFA.

181.    In the Fourth Quarter of 2020, Nassau Coliseum was obligated to pay Plaintiff $668,750, but Plaintiff only received $222,916.67, leaving an unpaid amount of $445,833.33.

182.    From the First Quarter of 2021 to June 30, 2022, spanning six quarters, the project interest totaled $668,750 per quarter for a total of $4,012,500.

183.    Additionally, Nassau Coliseum was obligated to pay the total amounts of $1,999,500 in quarterly installments between July 1, 2022 and July 1, 2022, due on or before the 15th day of each March, June, September, and December.

184.    However, as of August 17, 2023, Nassau Coliseum has not made all of the payments that it owes to Plaintiff, specifically for the Fourth Quarter of 2020, the First Quarter of 2021 to June 30, 2022, Quarters 3-4 of 2022, and Quarters 1-2 of 2023.

185.    Nassau Coliseum materially breached the terms of the MFFA by failing to make payments to Plaintiff in the amount and manner required under the MFFA, and thus is in default under the MFFA.

186.    As a result of Nassau Coliseum's material breach of the MFFA, Plaintiff has been damaged and is owed $6,498,375, together with interest thereon.

## COUNT XIV
## (Breach of Guaranty Against USIF)

187.    Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

188.    The MFFA is a valid and enforceable contract.

189.    As stated above in greater detail, in November 2015, USIF guaranteed the respective Companies' obligations to pay the Annual Fees according to the payment schedule attached to the MFFA to Plaintiff.  These Companies include but are not limited to 125 Greenwich Street, Brooklyn Public Library, 76 Eleventh, Nassau Coliseum, and WEHO.

190.    Plaintiff fully complied with its obligations under the MFFA and has fully performed under the MFFA.

191.    The respective Companies have breached their agreements by refusing to pay Plaintiff its rightfully owed Annual Fees under the MFFA.

192.    All conditions precedent to the obligations of the Companies to perform the MFFA by paying Plaintiff the Annual Fees have occurred, been performed, or have been waived, excused, or frustrated by the Companies in material breach of the MFFA.

193.    The Companies were obligated to pay the total amount in quarterly installments, due on or before the 15th day of each March, June, September, and December.

194.    However, as of August 17, 2023, the respective Companies have failed to pay millions of dollars in Annual Fees that are rightfully owed to BOEICS.  BOEICS has demanded payment, but the respective Companies have failed and refused to pay, which triggered USIF's obligation to guarantee payment per the MFFA.

195.    USIF materially breached the terms of the MFFA by failing to honor that guaranty regarding the respective Companies' obligations to make payments to Plaintiff in the amount and manner required under the MFFA, and thus is in default under the MFFA.

196.    As a result of USIF's material breach of the MFFA, Plaintiff has been damaged and is owed payment, together with interest thereon.

## COUNT XV
### (Declaratory Judgment Against USIF)

197.    Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

198.    As described above, Defendants' actions constitute Events of Default under the Agreements, MFFA, and 2019 Amendment—agreements under which Plaintiff is owed Annual Fees and Tail Fees from Defendants for satisfying Plaintiff's obligations.  Therefore, an actual and justiciable controversy exists between Plaintiff and Defendants.

199.    Plaintiff seeks and is entitled to a declaratory judgment adjudging and declaring that because the respective Companies defaulted on their obligations to pay Plaintiff Annual Fees and Tail Fees, the guaranty is invoked and USIF must pay Plaintiff its rightfully earned Annual Fees and Tail Fees.

200.    Plaintiff further seeks and is entitled to a declaratory judgment adjudging and declaring that, as a result of Defendants' breaches as set forth herein, Plaintiff is entitled to a declaration that all obligations outstanding under the Agreements, MFFA, and 2019 Amendment are immediately due and payable, together with interest accruing at the statutory rate.

201.    Plaintiff further seeks and is entitled to a declaratory judgment adjudging and declaring that, as a result of Defendants' breaches as set forth herein, Plaintiff is entitled to a

declaration that Defendants owe Plaintiff Quarterly Annual Fees and Tail Fees for Defendants' projects going forward as agreed upon under the Agreements and 2019 Amendment.

## COUNT XVI
### (Declaratory Judgment Against USIF)

202.    Plaintiff incorporates the foregoing paragraphs above as if the same were set forth at length herein.

203.    As described above, Defendants' actions constitute Events of Default under the Agreements, MFFA, and 2019 Amendment—agreements under which Plaintiff is owed Annual Fees and Tail Fees from Defendants for satisfying Plaintiff's obligations, but Defendants refused to pay Plaintiff for any redeployments related to the Nassau Coliseum Project.  Therefore, an actual and justiciable controversy exists between Plaintiff and Defendants.

204.    Plaintiff seeks and is entitled to a declaratory judgment adjudging and declaring that because USIF defaulted on its obligations to pay Plaintiff Redeployment fees from the Nassau Coliseum Project, the guaranty is invoked and USIF must pay Plaintiff its rightfully earned Redeployment fees.

205.    Plaintiff further seeks and is entitled to a declaratory judgment adjudging and declaring that, as a result of Defendants' breaches as set forth herein, Plaintiff is entitled to a declaration that all obligations outstanding under the Agreements, MFFA, and 2019 Amendment are immediately due and payable, together with interest accruing at the statutory rate.

206.    Plaintiff further seeks and is entitled to a declaratory judgment adjudging and declaring that, as a result of Defendants' breaches as set forth herein, Plaintiff is entitled to a declaration that USIF owes Plaintiff Redeployment fees for the Nassau Coliseum Project going forward as agreed upon under the Agreements and 2019 Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Beijing Overseas Education and Immigration Consult Service Co., Ltd. respectfully requests that the Court enter a judgment against Defendants USIF, Via Mizner, 701 TSQ, 101 Murray Street, AYB, 76 Eleventh, 125 Greenwich Street, WEHO, Brooklyn Public Library, and Nassau Coliseum by:

a) Awarding damages against the Defendants together with interest thereon;

b) Awarding Plaintiff declaratory relief;

c) Awarding Plaintiff punitive damages, attorney's fees and costs;

d) Awarding Plaintiff prejudgment interest at the statutory rate; and

e) Awarding Plaintiff such other and further relief as may be just and proper.

Dated: August 18, 2023
New York, New York

Respectfully submitted,
STINSON LLP

By: */s/ Kieran Corcoran*
Kieran M. Corcoran
STINSON LLP
100 Wall Street, Suite 201
New York, NY 10005
Telephone: (646) 883-7471
Facsimile: (646) 883-7472
Email: kieran.corcoran@stinson.com

*Attorney for Plaintiff Beijing Overseas Education and Immigration Consult Service Co., Ltd.*